## AMERICAN GENERAL INS. CO. v. ARIOLA et al.

### No. 11705.

Court of Civil Appeals of Texas. Galveston.

April 26, 1945.

Rehearing Denied May 16, 1945.

Vinson, Elkins, Weems & Francis and Fred R. Switzer, all of Houston, for appellant.

Allen, Smith & Neal, of Houston (Ira J. Allen, of Houston, of counsel), for appellees.

MONTEITH, Chief Justice.

This is an appeal in a workman's compensation suit brought by appellant, American General Insurance Company, to set aside an award of the Industrial Accident Board in favor of appellees as compensation for the death of Louis Ariola, which was alleged to have resulted from injuries sustained in the course of his employment with the Brown Shipbuilding Company, who carried compensation insurance with appellant.

Appellees, by answer and cross-action, alleged that on December 2, 1942, Louis Ariola, while employed as a scaler for the Brown Shipbuilding Company, breathed in particles of steel and rust scalings which became lodged in his respiratory organs and brought on an infection which resulted in his death on December 22, 1942.

In answer to special issues submitted, the jury found that Louis Ariola had sustained personal injuries on or about December 2, 1942, while working as a scaler for the Brown Shipbuilding Company and that such injuries were accidental and were the producing cause of his death. They found that his death was not caused by an occupational disease and that appellees were entitled to have their compensation awarded in a lump sum. Judgment was rendered against appellant and in favor of appellees for the sum of $6,610.34, payable in a lump sum.

Appellant contends, under appropriate points, that: (1) There was no evidence in the record that Louis Ariola had sustained a personal injury on or about December 2, 1942, or (2) that he had suffered a disease or infection in the course of his employment with the Brown Shipbuilding Company which was the producing cause of his death; (3) that there was no evidence to sustain the finding of the jury that the injury, if any, was accidental; and (4) that there was no evidence of such manifest hardship and injuries as to justify the award to appellees of a lump sum payment.

Appellees are the widow and dependent children, respectively, of Louis Ariola, who was employed by the Brown Shipbuilding Company as a "ship scraper" or painter's helper. His duties consisted of cleaning and scraping the rust, scales and other foreign matter from the bottom of the ship to prepare a clean surface for painting. On December 2, 1942, the deceased was working in a section of the ship between the bottom and the third deck, known as the "double bottom," which consisted of a space approximately two feet high which tapered to a height of approximately one foot. Entrance to this space was through a small manhole.

The deceased's wife testified that when he left for work on the morning of December 2, 1942, he was in perfect health and that when he came home he had a serious, choking cough. She testified that he continued to work until December 11, 1942, though his cough persisted; that later he

developed a fever and went to bed; that it became necessary to remove him to a hospital, and that he died on December 22, 1942. She testified that several days after he became ill he coughed up a ball of ship scalings and steel particles about the size of the end of her thumb.

Willard Yates, a fellow employee of the deceased, testified that he did the same kind of work as Ariola did, taking his place on the night shift and using the same tools; that on the afternoon of December 2, 1942, when Ariola came out from where he was working he was coughing and spitting up something that looked like steel dust with some streaks of blood in it. He testified that no masks or respirators were furnished the workers on the job at that time.

Dr. James M. Sucki, a witness for appellee, answering a hypothetical question based on facts supported by evidence in the record, diagnosed Louis Ariola's ailment as pneumonia. He testified that if a person got any steel filings in his respiratory tract "it would give him a cough as soon as he got them; that it was not necessary in order to develop an infection that would cause pneumonia for the particle to necessarily go into the lungs—that the infection might start in the bronchial tubes and the patient by extension develop pneumonia."

█ It is now the established law in this state that "a damage to the physical structure of the body need not necessarily be externally visible to come within the meaning of 'injury,' as that term is used in article 8309 of the Workmen's Compensation Law (Vernon's Ann.Civ.St.)." Maryland Casualty Company v. Rogers, Tex.Civ. App., 86 S.W.2d 867, 870, writ of error refused, and authorities there cited.

█ In the case of Maryland Casualty Company v. Rogers, supra, the fact situation and the questions involved were similar in all material respects to those in the case at bar. In that case compensation was sought for death from injuries to the respiratory organs. The contention was also made in that case that there was no evidence that deceased had received an injury as that term was defined, and that there was no showing that the injury was accidental, or that there was a causal connection between the injury and the death. The court, in holding that damage to the physical structure of the body need not be externally visible to come within the meaning of "injury" within the Compensation Act, held that symptoms are depended upon in a large measure to prove injury to a hidden organ and that evidence of violent coughing, spitting blood, and pains in the chest almost immediately after the infliction of the alleged injury amply supported the jury's finding that the deceased suffered compensable injuries to his lungs by the inhalation of foreign particles. In this case it was shown that the deceased had a violent coughing spell, during which he spat up blood and foreign matter, immediately after the alleged injury. This evidence, taken in connection with the quoted medical testimony, amply supported the jury's finding of the alleged injury.

In discussing the contention in the Rogers case that the injuries from which appellant was alleged to have died were not accidental, the court, continuing, said:

" 'The word "accident," as used in a compensation act requiring the injury compensated for to be by "accident," is usually held to be employed in its ordinary sense as meaning an unlooked-for and untoward event which is not expected or designed.' 71 C.J., p. 566.

" 'By the term "injury" is meant, not only an injury the means or cause of which is an accident, but also an injury which is itself an accident.' Carroll v. Industrial Commission, 69 Colo. 473, 195 P. 1097, 1098, 19 A.L.R. 107."

Continuing, the court said: "True, the cause of the injury here was not purely an accident as if the roof had fallen in, etc. Such a narrow construction is at variance with the wholesome purpose of the law. If the injury was undesigned and unexpected, had its 'origin in a risk connected with the employment,' and is shown to have flowed immediately and directly from that source as a rational consequence, it is compensable."

In this case the jury had for its consideration the testimony of deceased's wife and son that he left home on the morning of December 2 a well man, with no cough or cold; that he returned that night with a hard, severe, choking cough. This cough continued, and after some hours he coughed up a clot of ship filings, rust and scrapings. The doctor who attended him testified that the effect of such steel filings and scrapings would be to cause coughing and that such coughing would begin soon after drawing such foreign particles into the respiratory organs.

This evidence, we think, met the demands of the law and justified the jury in its findings that Louis Ariola sustained personal injuries as alleged, and that such injuries were accidental and were the producing cause of his death.

Appellant contends that there was no evidence in the record to justify the award of compensation in a lump sum.

Article 8306, Section 15, Vernon's Ann. Civ.Statutes, provides that in the event of death or in the event of total permanent disability, where, in the judgment of the Board, manifest hardship and injustice would otherwise result, the compensation might be awarded in a lump sum.

In construing this statute the courts of this state have uniformly held that "the question of payment of lump sum is to be determined as a matter of opinion, rather than as a matter of fact based upon the evidence in the more usual sense," Texas Indemnity Ins. Co. v. Arant, Tex.Civ.App., 171 S.W.2d 915, 916, error refused, and that the matter is left largely "to the discretion of the trier of facts." Texas Employers Ins. Ass'n v. Long, Tex.Civ.App., 180 S.W.2d 629, 633, error refused.

Under the evidence in the instant case the jury was, we think, authorized to find as a basis for its answers to the special issues submitted that hardship and injustice would result if the payment to the several appellees in the case in a lump sum was not awarded.

It follows from above conclusions that the judgment of the trial court must be in all things affirmed.

Affirmed.