**REYNOLDS–PENLAND COMPANY, Appellant,**

v.

**HEXTER & LOBELLO et al., Appellees.**

**No. 19337.**

Court of Civil Appeals of Texas, Dallas.

April 24, 1978.
Rehearing Denied May 28, 1978.

Robert B. Payne, Ronald G. Houdyshell, Payne & Spradley, Dallas, for appellant.

John H. McElhaney, Mark G. Magilow, Locke, Purnell, Boren, Laney & Neely, Dallas, for appellees.

AKIN, Justice.

The principal question on this appeal is whether equity will relieve a lessee, who, without fault on the part of the lessor, forgot to give timely notice of intention to renew an option to extend the lease term for an additional five years. We hold that the neglect of the lessee bars the interposition of equity. Accordingly, we affirm.

The property in question is located in a suburban shopping center and is used by the lessee as a men's clothing store. The lease was for a term ending on January 31, 1977, and contained the following provision granting the lessee an option to renew the lease:

> The lessee shall have, and is hereby given, the right to extend this lease for a further period of five (5) years beginning February 1, 1977, *conditioned only that the lessee shall give to lessors written notice of its election to exercise such right of extension at least nine (9) months prior to January 31, 1977.* [Emphasis added]

Under this provision, the time for exercising the option of renewal expired on April 30, 1976. After the lessee failed to exercise its option of renewal, Hexter, as representative of the lessor, notified Reynolds-Penland on June 28, 1976, that the lessor expected Reynolds-Penland to vacate the premises at the end of the lease term. Upon receiving this notice, the lessee's principal officer, Ed Reynolds, attempted to exercise the renewal option by letter of July 1, 1976, slightly more than two months after the time specified in the lease. The lessors declined to accept the attempted late

exercise of the option and elected to stand upon the specific condition in the lease and filed this suit seeking a declaratory judgment pronouncing the lease terminated on January 31, 1977. Reynolds-Penland responded, contending that since the delay in exercising the renewal option was slight, and that since the lessor had suffered no damage by the delay, the court should, accordingly, declare Reynolds-Penland's late exercise of the renewal effective. On these grounds, Reynolds-Penland moved for summary judgment, asserting that no fact issues existed and that it was entitled to summary judgment, as a matter of law, under equitable principles, extending the lease for an additional five years at the rate specified in the lease. The lessors also moved for summary judgment on the ground that, as a matter of law, Reynolds-Penland had no right to renew except as specifically provided in the lease. Prior to hearing on the motions, the parties stipulated that certain relevant exhibits and depositions would be considered as summary judgment evidence, fully authenticated for such purposes, so that the trial court could consider all evidence in ruling on both motions. The trial court denied the motion of Reynolds-Penland, but granted the motion of lessors and rendered judgment accordingly. Reynolds-Penland appeals.

The facts are undisputed. Reynolds, who was charged with the responsibility for exercising the option, testified in his deposition that he simply forgot to exercise the option and admitted that nothing said or done by the lessors misled him. He also testified that the lease containing the option was in the possession of Reynolds-Penland's attorneys, but he thought the lease required a six-month notice, rather than nine. When his attention was called to the matter by the lessor some two months after the time had expired for exercising the renewal option, he attempted belatedly to exercise the option. Reynolds admitted that he had had years of extensive experience in leasing property, both as a landlord and as a tenant; he understood renewal options and knew that the option was required to be exercised timely in writing.

Reynolds-Penland argues that the trial court erred in failing to recognize and apply the "rule of equity" which provides that a lessee's delay in giving written notice of renewal of the lease option should be excused where the delay was slight, lessor's loss small, and undue hardship would result to the lessee from the withholding of relief. We cannot agree with this contention because no such equitable rule exists in Texas.

■ The crucial question is whether mere neglect of the lessee in failing to timely exercise its option, absent other ameliorating circumstances such as fraud, misleading statements or acts by the lessor, or waiver, justifies the interposition of equity to rewrite a lease. We believe the correct rule, supported by the more numerous and better reasoned decisions, is that equity will not intervene in such a situation even though it may result in hardship to the lessee. *Koch v. H & S Development Co.*, 249 Miss. 590, 163 So.2d 710 (1964); *McClellan v. Ashley*, 200 Va. 38, 104 S.E.2d 55 (1958); *Woodrum v. Pulliam*, 453 S.W.2d 263 (Ky. App.1970); see, *Cattle Feeders, Inc. v. Jordan*, 549 S.W.2d 29, 32–33 (Tex.Civ.App.— Corpus Christi 1977, no writ); *Forest Park Lanes, Ltd. v. Keith*, 441 S.W.2d 920, 932 (Tex.Civ.App.—Fort Worth 1969, no writ); see also Annot., 44 A.L.R.2d 1352 (1955).

■ The lease provision required a nine-month notice to the lessor of the lessee's intent to renew for an additional five-year term at the same rental rate. This notice was a condition precedent to the lessee's right to renew and was for the lessor's benefit. Since Reynolds-Penland failed to exercise timely its right to renew through mere forgetfulness, that right was lost. The question then becomes whether equity should intervene in such a situation to relieve the lessee from complying with the terms of the lease, absent a waiver of the condition by the lessor. We hold that the neglect of the lessee bars the interposition of equity to grant relief to the lessee under these circumstances. In view of this holding, the common law rule that time is of the essence applies. Since the parties had con-

tracted for a nine-month notice to be given as a condition precedent to the lessor's obligation to extend the lease for an additional five years, the lessee must strictly adhere to this condition, unless excused by circumstances beyond his control. CLARK, EQUITY, § 144 (1954).

■ Reynolds-Penland asserts that not only will it be subjected to hardship, but also that a forfeiture of their anticipated renewal term will result. We cannot agree. At the time this suit was filed, Reynolds-Penland had nothing to forfeit. Its only right to occupy the premises beyond the primary term which the lessee had, was contained in the lease. A mere neglect to comply with the condition precedent gives the lessee no rights in the leased premises beyond the primary term. *See* WALSH, EQUITY, § 72, pp. 360–61 (1930). Consequently, there can be no forfeiture, as Reynolds-Penland asserts, since no primary right ever came into existence.

Our holding as to when equitable principles apply is supported by the rationale in *Barfield v. Howard M. Smith Company of Amarillo*, 426 S.W.2d 834, 839 (Tex.1968). In that case, the supreme court held that a party claiming an estoppel must have used diligence to ascertain the truth of the matters upon which he relies in acting to his detriment. *Barfield* concerned a situation where the lessee had paid a lesser rental than that specified in the lease and asserted an equitable estoppel against the lessor's action for the difference. In rejecting this argument, the court stated that "[O]ne of the requirements of estoppel is that the party claiming the estoppel was without knowledge, or the means of acquiring knowledge of the facts which the party to be estopped is alleged to have represented by his acts, conduct or silence." That court concluded that where the facts were open for his convenient ascertainment, he cannot effectively say he was deceived or misled. The same principle applies here. Similarly, Reynolds-Penland had a copy in its possession, and could easily have ascertained the date for exercising the option by simply reading the lease.

■ Furthermore, in the absence of fraud or misrepresentation, a party is charged with knowing the legal effect of a contract voluntarily made. *Barfield* at 838. To state the rule differently, absent fraud, a party to a contract who has access to the full information of its contents cannot avoid it on the ground of his own neglect in failing to read it. *Indemnity Ins. Co. of North America v. W. L. Macatee & Sons*, 129 Tex. 166, 101 S.W.2d 553, 556 (1937); *Morrison v. Insurance Company of North America*, 69 Tex. 353, 359, 6 S.W. 605, 606 (1887); *Womack v. Western Union Telegraph Co.*, 58 Tex. 176, 179 (1882).

In support of its contention that equity should intervene, Reynolds-Penland cites dicta in *Jones v. Gibbs*, 133 Tex. 627, 130 S.W.2d 265, 272 (1939), which quoted the following statement from *F. B. Fountain Co. v. Stein*, 97 Conn. 619, 118 A. 47, 50 (1922):

> In cases of mere neglect in fulfilling a condition precedent of a lease, which do not fall within accident or mistake, equity will relieve when the *delay* has been *slight*, the loss to the lessor small, and *when not to grant relief would result in such hardship to the tenant as to make it unconscionable to enforce literally the condition precedent of the lease*. [Emphasis added]

In our view, Texas has not adopted this rule. *Jones v. Gibbs, supra,* concerned an option to renew a lease to cut timber where the defendants had paid the full consideration for the timber at the time the lease was executed. The Commission of Appeals held that the option was renewed when the lessee timely paid, at the administrator's direction, the option renewal sum to the attorney for the lessor's estate.

The *dicta* in *Jones* discussing *F. B. Fountain, supra,* as well as other cases, was not essential to the decision and was predicated upon the assumption by the court that "[I]f it is assumed the plaintiff in error (Jones) did not direct the payment of the rental for 1934 to be made to Wynne (the attorney for Jones), then the facts and circumstances proven by the undisputed evidence . .

are such . . . as to bring the case within the qualification established by the foregoing authorities to the strict rule generally applied to options. The case is one for the application of "overruling equitable rules". *Jones*, 130 S.W.2d at 273. We do not regard this dicta as adopting the rule in *F. B. Fountain v. Stein, supra.* This is particularly true in light of the fact that the Connecticut court clearly stated that equity would intervene in the case of mere neglect and yet the court in *Jones* when it discussed by dicta this decision, as well as other decisions not so broad as *Fountain*, to the assumed facts, stated that equity would intervene where the lessee's failure to comply was due in part to the conduct of the lessor or was the result of an honest and justifiable mistake on the part of the lessee and equity would not intervene in the case of *willful conduct* or *gross negligence. Jones* at 275. The *Jones* court did not say that equity will intervene in case of mere neglect. We do not read the language "honest and justifiable mistake" to include within its ambit mere neglect in failing to read a lease. Furthermore, no question of neglect on the part of the lessee existed in *Jones*; indeed, the lessee in *Jones* acted both timely and diligently. Consequently, in the absence of a clear statement that equity will intervene in cases of mere neglect, the dicta in *Jones, supra,* is not authority to hold that equity will intervene when the lessee merely neglected to read its lease and to exercise its option.

Neither does *Sirtex Oil Industries, Inc. v. Erigan*, 403 S.W.2d 784 (Tex.1966) support Reynolds-Penland's position. Although that court quoted from the dicta in *Jones v. Gibbs, supra,* it held that the clause in a lease requiring annual payments was a covenant, not a condition. This holding disposed of the case, but that court noted by dicta that equity abhors a forfeiture and copied the quotation of *F. B. Fountain v. Stein, supra,* from *Gibbs.* Since that discussion was not essential to the decision, and since the question of whether neglect justifies the interposition of equity was not before that court nor discussed by that court, we conclude that *Sirtex* is, likewise, not

authority to hold that mere neglect of a lessee condones the intervention of equity.

We cannot agree with the dissent's assertion that the discussion of equitable principles in *Jones* and *Sirtex* was an independent or alternative ground upon which each of these decisions rested. In our view, the dissent fails to draw a distinction between a holding predicated upon two separate and distinct grounds (alternative grounds) and dicta. In *Casparis v. Fidelity Union Casualty Co.*, 65 S.W.2d 404, 406 (Tex.Civ.App.— Austin 1933, writ ref'd), the Austin Court of Civil Appeals enunciated the rule that "where an appellate court rests its decision on *two or more distinct grounds*, each is as much an authoritative determination as the other, and neither can be disregarded as obiter dictum." *Id.* 406. In *Casparis*, the court was concerned with whether it was bound by both grounds of the Commission of Appeals' decision in *Cooper v. United States Fidelity & Guaranty Co.*, 29 S.W.2d 971, 973 (Tex.Comm'n App.—1930, judgmt. adopted). The *Casparis* court did not, however, discuss the distinction between alternative holdings of an opinion and obiter dicta. Although we agree with the rule stated in *Casparis*, it has no application here. In our view, there is a sharp distinction between alternative holdings and obiter dictum. The former exists where the appellate court rests its decision under the facts presented on two separate, but equally valid, grounds. For example, a court may rest a decision on the statute of frauds, and, additionally, on the statute of limitations, either of which is determinative. On the other hand, obiter dictum exists where an appellate court decides a case on a specific ground based upon the facts of the case and, then assuming facts not before it, makes statements based upon the assumed facts. Such was the case in both *Jones* and *Sirtex*.

If the view advanced by the dissent is accepted, all contracts would be called into question as meaningless and uncertain, dependent upon the whims of a panacean court or a jury. If certainty of rights and obligations is the basic goal of contract law,

this goal would be frustrated by making every option contract the subject of equitable discretion by both court and jury. The absurdity of such a rule is even more apparent where, as here, the contract is between experienced and sophisticated businessmen.

Affirmed.

GUITTARD, Chief Justice, dissenting.

I cannot agree that this is a proper case for summary judgment. In my opinion, the record presents fact issues or, at least a question of equitable discretion that could not properly be decided by the trial court on the summary-judgment proof.

The majority opinion approaches this case as if the principal question were whether neglect of the lessee "justifies" equitable relief. Such a statement of the question assumes a negative answer because, of course, the plaintiff's neglect is never a ground of relief. As I see it, the question is rather whether the lessee's forgetfulness bars equitable relief, no matter what grounds for such relief may be shown. More precisely, I would state the question as whether, in cases of merely inadvertent failure to comply strictly with the time requirement for giving notice of renewal of a lease, equity will relieve when the delay has been slight, the loss to the lessor small, and when denial of relief would result in such a hardship to the tenant as to make it unconscionable to enforce literally the time requirement as a condition precedent to renewal. Although I recognize that the authorities are divided on this question, I conclude that the better view allows such relief in a proper case, and I believe that this view has been adopted by the Supreme Court of Texas in *Jones v. Gibbs*, 133 Tex. 627, 130 S.W.2d 265, 272 (1939) and *Sirtex Industries, Inc. v. Erigan*, 403 S.W.2d 784, 788 (Tex.1966).

I recognize, of course, that time is of the essence in an ordinary option contract in which the optionee pays a relatively small consideration for the optionor's promise to keep an offer open for a specified period of time. In such a case, the optionee pays his money for time in which to make a decision

as to whether he will purchase the property in question, and, if he fails to exercise the option within the time specified, he is in no position to seek equitable relief because he got everything he paid for. On the other hand, if the optionee has paid the major consideration for his purchase of the property, or has made other expenditures in reliance on the option, the time-of-the-essence rule is not so clearly applicable.

This problem was fully considered by the Supreme Court of Texas in *Jones v. Gibbs*, 133 Tex. 627, 130 S.W.2d 265, 272 (1939). That case involved a timber deed, executed for a substantial initial consideration, allowing the grantee ten years to remove the timber from the land in question, but granting an option to renew from year to year for not more than five additional years on payment of a small rental. Termination was asserted on the ground that a third party to whom the rental was paid was not authorized to receive it for the grantor's estate. The court mentioned a possible conflict in the evidence as to whether the grantor's administrator had authorized payment to the third party, but held that this alleged conflict did not present a material fact issue because even if it were assumed that the third party were not authorized to receive it, special circumstances authorized equitable relief from literal enforcement of the condition prescribed by the deed. The court observed that the option was not like the usual option to buy land, since the full agreed value of the timber had been paid, but was more like a lease with option to extend, and that to consider the grantee's rights terminated would amount to forfeiture of a valuable property right. Accordingly, the court held that the usual requirement of strict compliance with the condition precedent was excused by "overriding equitable rules" in view of circumstances indicating that the error in making the payment was not due to willful or gross negligence, but was a result of an honest mistake, and that the right to take the timber would result in "unconscionable hardship." In support of this holding, the court cited authorities from other jurisdictions, includ-

ing *F. B. Fountain Co. v. Stein,* 97 Conn. 619, 118 A. 47, 50 (1922), from which the following statement was quoted with approval:

> In cases of mere neglect in fulfilling a condition precedent of a lease, which do not fall within accident or mistake, equity will relieve when the delay has been slight, the loss to the lessor small, and when not to grant relief would result in such hardship to the tenant as to make it unconscionable to enforce literally the condition precedent of the lease.

I cannot agree that the *Jones* opinion is *obiter* insofar as it says that the party claiming equitable relief need not establish that he was misled by the other party. Although the court said that the grantee had shown that he had not paid the wrong party, that is not the main ground on which the decision rests. The case was expressly decided on the broader ground of equitable relief from unconscionable hardship stated by the Connecticut court in the quotation from *F. B. Fountain Co. v. Stein, supra.* The court used the expression "honest and justifiable mistake" as contradistinguished from "willful or gross negligence," thus excluding simple inadvertence as a ground for denying equitable relief.

This express adoption of the Connecticut rule in *Jones* was reaffirmed in *Sirtex Industries, Inc. v. Erigan,* 403 S.W.2d 784, 788 (Tex.1966). In *Sirtex,* likewise, another ground was available for the decision, namely that the obligation to pay was a covenant rather than a condition. Nevertheless, the supreme court rested its decision on both grounds. When our highest court gives two grounds for a decision, both of which are carefully developed and supported by authority, an intermediate court cannot justifiably disregard either of these grounds as *obiter. Stanolind Oil & Gas Co. v. Edgar,* 98 S.W.2d 222, 223 (Tex.Civ.App. —Austin 1936, writ dism'd); *Casparis v. Fidelity Union Casualty Co.,* 65 S.W.2d 404, 406 (Tex.Civ.App.—Austin 1933, writ ref'd).

The majority opinion cites cases from other jurisdictions supporting the view that "neglect" by the lessee in failing to read his lease or in forgetting the deadline for exercise of an option precludes equitable relief no matter how great the resulting hardship. This very line of authorities was rejected in *Jones* and also in the Connecticut cases cited in *Jones* and *Sirtex.* The Connecticut rule has since been followed in other jurisdictions. In *Sy Jack Realty Co. v. Pergament Syosset Corporation,* 27 N.Y.2d 449, 318 N.Y.S.2d 720, 267 N.E.2d 462, 463 (1971), the renewal notice was mailed in time, but was not delivered, and actual notice was given a month late, though still about two months before expiration of the lease. The New York Court of Appeals held that equitable relief was proper on "the principle that a tenant should be relieved of its default when its failure to give the requisite timely notice of renewal of its lease—or to perform some other condition precedent to renewal—has neither harmed nor prejudiced the landlord and was not due to bad faith."

Another New York case applying this principle is *George W. Millar & Co. v. Wolf Sales & Service Corp.,* 65 Misc.2d 585, 318 N.Y.S.2d 24, 25–26 (Civ.Ct. of City of New York, 1971), holding that failure of memory as to the time for renewal did not bar equitable relief. Similarly, equitable relief was granted notwithstanding the lessee's forgetfulness of the deadline in *Sosanie v. Pernetti Holding Corp.,* 115 N.J.Super. 409, 279 A.2d 904, 908 (1971).

Under these authorities, and also under *Jones* and *Sirtex,* as I interpret them, the standard governing the lessee's conduct is not freedom from "neglect", but excusable fault as distinguished from bad faith or gross negligence, and forgetfulness is excusable if the delay is not harmful to the lessor. Consequently, the lessee need not show that he was affirmatively misled by any conduct of the lessor or that he was otherwise free from fault.

In my view, the standard of excusable fault is sound. The lessor should not reap an unconscionable advantage from an inadvertent delay that has caused no substantial loss. The notion that a party's claim to relief should be barred by his own slight

fault is no longer favored in tort cases, as exemplified by the trend to comparative negligence and disallowance of the defense of contributory negligence in cases of strict liability. *See* Tex.Rev.Civ.Stat.Ann. art. 2212a (Vernon Supp.1977); *Henderson v. Ford Motor Co.*, 519 S.W.2d 87, 89 (Tex. 1975). It is no more appropriate in equity, whose very nature is to afford relief from strict rules of law. The majority opinion goes against this trend in holding not only that slight fault bars equitable relief, but also that simple forgetfulness constitutes inexcusable fault as a matter of law.

If my interpretation of *Jones* and *Sirtex* is correct, the summary judgment in this case is erroneous because the question of whether the delay was slight and whether lessee will suffer an unconscionable hardship are fact questions on this record, even though the circumstances are, for the most part, undisputed. Consequently, I would apply the familiar rule that when different fact inferences may be drawn from undisputed evidence, a jury question is presented. *Le Master v. Fort Worth Transit Company*, 138 Tex. 512, 160 S.W.2d 224, 226 (1942); *Commercial Standard Ins. Co. v. Davis*, 134 Tex. 487, 137 S.W.2d 1, 2 (1940); *Drake v. Walls*, 348 S.W.2d 62, 65 (Tex.Civ. App.—Dallas 1961, writ ref'd n. r. e.). Since this is an appeal from a summary judgment, every reasonable doubt must be resolved in favor of the party opposing the motion. *Wilcox v. St. Mary's University*, 531 S.W.2d 589, 591 (Tex.1976).

Under these authorities, I conclude that whether the delay of two months was more than slight is a fact issue on this record. "Slight" is a relative term and must be considered with respect to the length of the period remaining and whether the delay caused any inconvenience to lessors. There is evidence indicating that the delay in giving the notice caused no such loss or inconvenience. Thus, the case is like others in which the time when relevant action was taken is undisputed, but the circumstances raise a fact issue as to whether it was taken within a reasonable time. *General Acc. Fire & Life Assur. Corp. v. Butler's Ice Cream Factory*, 5 S.W.2d 976, 979 (Tex.

Com.App.1928, judgmt. adopted); *Sylvester v. Watkins*, 538 S.W.2d 827, 831 (Tex.Civ. App.—Amarillo 1976, writ ref'd n. r. e.); *Pioneer Casualty Co. v. Blackwell*, 383 S.W.2d 216, 219 (Tex.Civ.App.—Waco 1964, writ ref'd n. r. e.).

Similar considerations apply to the matter of unconscionable hardship, since there is evidence of substantial expenditures made and inventory purchased in reliance on renewal of the lease and also evidence of a potential loss of good will built up for lessee's clothing store at this particular location. At least some hardship is shown, and whether it is great enough to justify equitable relief is a question of fact. The question is similar to the issue of "manifest hardship and injustice" as a basis for lump-sum settlement in workmen's compensation cases, which, though a matter of opinion rather than of fact, is routinely submitted to the jury if any factual basis for the opinion is shown, *American General Ins. Co. v. Ariola*, 187 S.W.2d 585, 588 (Tex.Civ.App. —Galveston 1945, writ ref'd); *Texas Indemnity Ins. Co. v. Arant*, 171 S.W.2d 915, 919 (Tex.Civ.App.—Eastland 1943, writ ref'd).

This conclusion is supported by *Xanthakey v. Hayes*, 107 Conn. 459, 140 A. 808 (1928), which was cited with approval by our supreme court in *Jones v. Gibbs, supra.* In *Xanthakey*, the trial court granted equitable relief on facts not materially different, except possibly in degree, from those shown in the present record, and the appellate court held that no error was shown. I cannot escape the conclusion that unless the majority is correct in repudiating the Connecticut rule, the evidence in this case should be presented to a jury.

Lessors argue that questions of slight delay and unconscionable hardship are not jury questions, but matters of equitable discretion which the trial judge resolved in their favor, and that this court is bound by his decision because no abuse of discretion is shown. This argument is novel insofar as it suggests that the scope of the trial court's discretion in a summary-judgment

case is broader than that of the appellate court. Rule 166–A of the Texas Rules of Civil Procedure authorizes summary judgment only when the summary judgment evidence establishes that "the moving party is entitled to judgment as a matter of law." The authority of appellate courts to determine matters of law is as broad as that of the trial courts. *See Southland Life Ins. Co. v. Egan*, 126 Tex. 160, 86 S.W.2d 722, 723 (1935); *Ford v. Allen*, 526 S.W.2d 643, 644 (Tex.Civ.App.—Austin 1975, no writ). On appeal from a summary judgment, any doubt, which in other cases would be resolved in favor of the judgment, must be resolved against the moving party. *Wilcox v. St. Mary's University*, 531 S.W.2d 589, 593 (Tex.1976); *Womack v. Allstate Insurance Co.*, 156 Tex. 467, 296 S.W.2d 233, 235 (1957); *Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929, 931 (1952). These authorities allow the trial court no range of discretion that may be exercised in favor of the moving party without a full trial.

Although the concept of equitable discretion has been recognized in many Texas cases, its scope has never been defined. *See Texas Indemnity Ins. Co. v. Arant*, 171 S.W.2d 915, 919 (Tex.Civ.App.—Eastland 1943, writ ref'd). Under the English equity practice adopted in most states, there is no right to trial by jury and the equitable discretion of the chancellor includes the power to find facts. *See Mathews v. First Citizens Bank*, 374 S.W.2d 794, 797 (Tex.Civ. App.—Dallas 1964, writ ref'd n. r. e.). This kind of discretion cannot be properly exercised in Texas if a jury is demanded because, under the blended Texas practice, the right of jury trial extends to fact issues in equitable, as well as legal proceedings. *San Jacinto Oil Co. v. Culberson*, 100 Tex. 462, 101 S.W. 197, 198, 199 (1907); *Ex parte Allison*, 99 Tex. 455, 90 S.W. 870, 871 (1906). Accordingly, the equitable discretion of the chancellor to find facts cannot properly be exercised in response to a motion for summary judgment, which is proper only where there is "no genuine issue of material fact," whether the issue asserted bears on legal or equitable relief.

If there is a range of equitable discretion within the authority of the trial judge apart from his authority to find facts, reviewable only for abuse of discretion, the matters which may be so determined are more nearly analogous to fact inferences to be drawn from the entire record than to conclusions of law resulting from application of established rules to undisputed facts. Consequently, such discretion should not be exercised without development of the evidence at a full trial. It cannot properly be exercised on affidavits and other summary-judgment evidence designed to show that the moving party is entitled to judgment as a matter of law. Summary judgment is proper only when the summary-judgment proof shows that no question of equitable discretion exists. In the present case, even if slight delay and unconscionable hardship are not jury issues, they are at least matters of equitable discretion for the trial court to determine on a complete record and cannot properly be decided in response to a motion for summary judgment. Consequently, this summary judgment cannot be upheld as an exercise of equitable discretion.

Since, for the reasons stated, I do not agree with the majority's rejection of the Connecticut rule, and I conclude that summary judgment cannot be sustained on any of the grounds asserted by lessors, I must respectfully dissent.

AKIN, Justice.

## ON MOTION FOR REHEARING

■ Reynolds-Penland contends that the trial court erred because the question of its failure to timely exercise its option constituted an "honest and justifiable mistake" was a question for the trier of fact rather than a matter that can be determined by the court on summary judgment. Additionally, it asserts that whether the delay is slight, the loss to the lessor small, and whether the denial of the relief would result in such a hardship to the tenant as to make it unconscionable to enforce literally the time requirement for exercising the op-

tion in the lease are questions for a jury. We cannot agree. These ultimate determinations which trigger the interposition of equity are made by the *court*, not the jury. To permit a jury to determine these issues is to permit it to determine whether equitable relief should be granted. This is impermissible in our system. *Jones v. English*, 268 S.W.2d 686, 690 (Tex.Civ.App.—San Antonio 1954), *aff'd*, 154 Tex. 132, 274 S.W.2d 666 (1955). The question of whether equity ought to intervene must be determined by the court based upon all of the circumstances of the case and the principles of equity, with which a jury is not presumed to be familiar. *Bergstedt v. Bender*, 222 S.W. 547, 549 (Tex.Com.App.—1920, judgmt. approved); *Fabra v. Fabra*, 221 S.W. 1008, 1009 (Tex.Civ.App.—San Antonio 1920, writ ref'd); *Bourland v. Huffhines*, 269 S.W. 184, 186 (Tex.Civ.App.—Amarillo 1925), *aff'd*, 280 S.W. 561 (1926).

In the case at bar, it was, therefore, the court's function to determine whether established facts authorized equitable intervention to override the explicit agreement of the parties. It has similarly been held that a jury cannot determine issues such as whether a city ordinance is reasonable, *City of Austin v. Austin City Cemetery Ass'n*, 87 Tex. 330, 28 S.W. 528, 531 (1894), or the "issue of expediency, necessity or propriety of equitable relief." *Alamo Title Co. v. San Antonio Bar Association*, 360 S.W.2d 814, 816 (Tex.Civ.App.—Waco 1962, writ ref'd n. r. e.); *Codgell v. Fort Worth National Bank*, 544 S.W.2d 825, 829 (Tex.Civ.App.—Eastland 1976, writ ref'd n. r. e.). *See Dennis v. United States*, 341 U.S. 494, 71 S.Ct. 857, 869, 95 L.Ed. 1137 (1951). *Cf. Hanson Southwest Corp. v. Dal-Mac Construction Co.*, 554 S.W.2d 712, 717 (Tex. Civ.App.—Dallas 1977, writ ref'd n. r. e.) (holding that whether one corporation is the alter ego of a parent is not a jury question).

■ Although we agree with the dissent that the right to a jury trial extends to disputed fact issues in equitable, as well as legal proceedings, we cannot agree that such questions as whether the delay is slight or whether an unconscionable hard-

ship results are the type of disputed fact issues that may be decided by a jury. A jury could, of course, determine facts such as when the notice to renew was given or the value of the improvements made by either the tenant or the landlord. Our holding is simply that a jury may not determine the ultimate grounds mandating equitable intervention.

Reynolds-Penland seeks to draw a distinction between the exercise of discretion by a trial court in a plenary trial and on motion for summary judgment. In so doing, the dissent, as well as Reynolds-Penland, would have us remand this case on the ground that the trial court could not exercise its discretion on motion for summary judgment where the facts are undisputed. In our view, Reynolds-Penland's position places form above substance and would be an unwarranted waste of judicial time. In *Elias v. Manis*, 292 S.W.2d 836, 838 (Tex.Civ.App.—Beaumont 1956, writ ref'd), that court held, in a well-reasoned opinion, that summary judgment may be granted upon the application of equitable principles to undisputed facts.

■ Consequently, even assuming such a rule as enunciated in *F. B. Fountain* to be the rule in Texas, we would, nevertheless, hold that the trial court did not abuse its discretion in declining to grant relief. Whether an unconscionable hardship will result or whether the failure to exercise the option was the result of an "honest and justifiable mistake" so as to justify the interposition of equity are matters within the sound discretion of the trial court, subject, of course, to an abuse of discretion standard of review. *Mathews v. First Citizens Bank*, 374 S.W.2d 794, 797 (Tex.Civ. App.—Dallas 1963, writ ref'd n. r. e.). *See* Annot., 27 A.L.R. 981, 982 (1922). Since the trial court did not abuse its discretion, the motion for rehearing is denied.